THE G. L. ROSENTHAL.

THE E. D. MERRITT.

FOSTER et al. v. THE G. L. ROSENTHAL and THE E. D. MERRITT.

(District Court, S. D. New York.   May 31, 1893.)

MARITIME LIENS—CHARTER—TOWAGE AGREEMENT—TIME CONTRACT—BREACH
OF—INDIVISIBILITY OF CONTRACT.
  Where the owner of tugs made an agreement to tow libelant's boat
  on her various voyages throughout an entire season, and entered upon
  such contract, and afterwards, near the end of the season, willfully
  abandoned it, and refused to take libelant's boat, *held*, that the tugs were
  answerable in rem for the damages attending the breach of contract.

In Admiralty.   Libel to enforce lien for breach of contract.
Decree for libelants.

Lamb, Osborne & Petty, for libelants.
Hyland & Zabriskie, for respondent.

BROWN, District Judge.   In the spring of 1892, the owner of the
tugs Rosenthal and Merritt contracted to tow the libelants' boat,
the Retsof, during the canal season of 1892, between Rochester and
New York, bringing salt from Rochester to New York, or to points
on the Hudson river as directed, at the rate of 90 cents per ton
on all down trips, and to deposit with the libelants $25 on each
round trip as a guaranty of good faith; the same to be held by
the libelants until the contract was completed.   It was also agreed
that the tugs should be at the eastern end of the canal as soon
as the season opened.

The libel alleges a delay of 10 days in arriving at the canal at
the beginning of the season; the performance of the contract there-
after until November; and that then the respondent willfully aban-
doned his contract and took other boats.   A lien is claimed for
the damages.

The evidence does not sufficiently show that the libelants actually
suffered any damage by the delay in arriving at the canal at the
opening of the season, in consequence of the crowd of boats in
waiting there.   Deposits to the amount of $125 having been made
with the libelants, pursuant to the contract, and the damages aris-
ing from the abandonment of the contract in November being $225,
there remains a balance of $100 with interest, for which the libel-
ants are entitled to a decree, if the action in rem is maintainable.

The claimant contends that the only principle upon which a lien
against the boat is maintainable for her breach of contract, is
the mutuality of the remedy between the ship and cargo; and that

inasmuch as for the last voyage there was no cargo taken on board upon which a lien could be enforced for freight or towage, there is no counter lien for the damage to the libelants arising from the abandonment of the last trip.

If this argument were admissible, it would amount simply to allowing the ship to take advantage of her own wrong. It is not pretended that there was no cargo for shipment; its readiness is proved. The act of abandonment was willful, and from no other motive, apparently, than to secure higher compensation near the close of the season. The claimant should, therefore, be deemed estopped from alleging any such lack of mutual remedy.

The contract in the present case is not a separate contract for independent voyages, but a contract for a service during the entire season. The proofs show that the rate of compensation was a rate adopted with reference to the whole season; the rate for the first part being in excess of the market price. The requirement of a deposit was intended as a guaranty against precisely such fraudulent conduct as Hazard, the master, was guilty of in the end. As respects a lien for breach of contract, this case is not distinguishable from other time charters. If the charterer in all such cases had no remedy against the vessel for an abandonment, after she had entered upon a contract contemplating numerous voyages, except for an abandonment of the particular voyage on which some cargo might have been actually taken on board, his remedy against the ship for breach of charter would be practically destroyed. Such I do not understand to be the law; but rather the rule stated by the present Mr. Justice Brown in the case of The Ira Chaffee, 2 Fed. Rep. 401, where he says:

"It must now be considered as settled that if the ship enters upon the performance of its work, the ship becomes pledged to the complete execution of the contract, and may be proceeded against in rem for a nonperformance."

Actions in rem are not uncommon in this court for the breach of time charters, of which The Calabria, 24 Fed. Rep. 607, is an example. No question was there made of the jurisdiction of the court to proceed in rem, although no breach of the charter was established; and the decision was affirmed on appeal. In the case of The Baracoa, 44 Fed. Rep. 102, it was assumed that after the vessel had entered upon the performance of her time charter for three years, the charterer could recover damages for breach of the express covenants of the charter as respects draft and speed, although after trial he had for those breaches rejected the vessel; the charter "forming a continual contract, and the breaches being continuing breaches."

The contract in this case being evidently a single indivisible contract, and the boats having entered upon t ` performance of it, I must hold them answerable in rem for the damages attending the breach and refusal to continue it till its termination.

Decree for the libelants for $100, with interest and costs.